anyone who would like to speak When you talk about reasonable attorney's fees, there's usually two elements. One is the hours spent, the other is the rate, and both those are in play today. What we've done is we've now constricted the hours, which I'd like to start with the hours and later the rates, constricted them greatly so that all we're looking at today is a five and one-third month period. We call it the briefing period. The briefing period, in the appellant's behalf, and I've represented them all three years here, and in the prior case and this case. In those five and a third months, I spent 280 hours. No one questions that. In fact, the appellate has admitted that the hours were spent. The question is the reasonableness of those hours. The court found that only half of them were reasonable and allowed 140 out of the 280 hours and disallowed the rest. The court's reasoning was, its key reason it said, and indeed the only reason I can find for the court's decision was that several years before in the primary case, which was a so-called passive loss case, which as I said we were successful on, the court said the key was that during that process the appellant owned horses in Louisiana and he lived in Minnesota. So he conducted his management of his horse operation by telephone. And when I say by telephone, I mean by telephone. There were thousands, thousands of telephone calls between he and Louisiana operating his business. The court called them, called it micromanagement, was quite disparaging of . . . Counsel, that seems to go to the . . . I'm sorry, Your Honor. That seems to go to the part of this case that we're not here to address. As you point out, this is the attorney's . . . I don't know who I'm . . . I think your argument would be more helpful to us if you'll focus on the attorney's fees themselves and why the district court's reduction was an abuse of discretion. Yes. They have a broad . . . tax credit is a broad discretion. We don't deny that. But this one is bizarre. It's about the only word I can use. What the court said is the key was that back when he ran his horse business with all these thousands of telephone calls, that that carried over into this briefing period process of preparing briefs. Pretty far-fetched. But the bizarre part of it is that the court found in the other trial that in these management activities, he was spending over 200 telephone calls average per month. 200. Now we come to the present, and the court says this carries over. He's doing the same thing. He's got this thing for telephone calls, and they're not all reasonable. The facts are these, that in the five and a third months of this briefing period, this 280 hours was going on, there were 57 telephone calls between myself and the appellant. 57. That's an average of 10 per month, not 200 per month. I can't see. I'm going to leave to the appellate's counsel to tell you how that makes any sense. There are a lot of other reasons why this analogy from actually from seven or eight years ago, his practices in managing a business compared to his practices helping me write a brief. I mean, that's a far-fetched in the first place. 10 hours versus 200, we can't figure it out. And that's the only reason the court gives. How many hours were spent on the 57 phone calls? Were spent on which? The 57 phone calls that you say are unusual. I don't know. My time sheets are in the record, and everyone's agreed I spent the hours, and the only question is reasonableness. But I didn't keep records that meticulously. If I worked on the brief that day and talked to him twice that day, which I did sometimes, multiple, there are still only 57 calls. I didn't break those down. I gave a total figure for all of it. I can estimate it for you. I don't think that's what you want. There is no record of the time. If I understand your argument, what you're pointing to us is why your client should pay you for what services you provided. But I don't see that that answers the reasons or answers the justification the court would have to expect the other party to pay at that same amount was unreasonable. And to reduce what the other party is required to pay you, that's the question we have. That's between you and your client. But all I'm saying is the analogy, it was, I think, bizarre. And maybe Appelli can explain it to you a little better. But to compare 10 calls a month, I've often made 10 calls to the client a month. 10 calls a month compared to 200 calls a month in his prior thing, it is bizarre. Okay. What about the question whether 176 hours was just excessive amount of That's about four weeks of full-time work. That's correct. Yes, sir. Well, one reason is pure professionalism. We thought we were going to win this case, and we sure weren't going to take a chance on losing it by snatching defeat from the jaws of victory. So we were, I was being very professional. And as for the 36 pages, I almost laughed when I read that because first thing I learned in law school is it takes a lot more time to write 36 pages than 72. Yeah, no question about that. And I appreciate that you write short briefs. We all appreciate that. So maybe that's not the right measure, but whether four weeks full-time is something the other side should pay for, I suppose is. Well, before we get to the rates, which is a completely different issue, let me give you the bottom line on the rates, and then I'd like to make a point. My normal hourly rate for all those years was $400. That's what I charged, $400 per hour. So again, it cut the allowance in half. Well, what happens geometrically there is if you take away half the hours and take away half the rate, you've taken away three-fourths, not a half of the entire amount. Anyway, good laws should end up in fairness. And when they don't, you need to look at what's going on again. And that's what happened here. The tax court found that for 14 months, the last 14 months of this trial included both bifurcated trials, one in New Orleans, one in Washington, D.C. It found that for 14 months, the appellee had not been, I'm trying to recall the term, substantially justified in carrying forward with this case. But they did carry forward. Now, what did the appellant do? The appellant did nothing wrong. He kept on keeping on. He kept paying and engaging me as his attorney until 14 months later he won the case. The fault, if you want to call it that, is the appellees who should have dropped the case 14 months earlier. That's the only reason these attorneys fees were spent, was because, not of the appellant's actions, but because of the appellees. They're the ones that messed it up. The appellant didn't do anything wrong. And yet, when we come to the bottom line, the appellee gets a slap on the hand, has to pay 25% of the fees, while the appellant, who was forced into this position by the appellee, has to pay 75% of them. That is simply not fair. It's fair if you think my services aren't worth that much or something. That's a different issue. But the fact that the person that, as I say, caused the mess is the appellee, just smacks me of something wrong. Mr. Krigo, you're in your rebuttal time. You can reserve or you can continue. I'm sorry? I said you're now in your rebuttal time. You can continue to make your argument or you can reserve that remaining time for rebuttal. Okay. I only have one more subject. Well, that particular thing on the hours, I think that should just be stricken reverse and the whole 280 hours allowed. There were other reasons for allowing those hours. Remind me, what did the tax court say was the reason for reducing the rate? The statute starts at a base rate of $180 an hour. Right. The only way you can get up is with special factors. Special factors. And this is your thoroughbred argument. The court said no special factors. We say there are two, at least two. One, the fact we won the case 100%, and we've got a case from the Fifth Circuit that at least pays lip service to the fact that certainly could be a special factor. And my background, I've devoted my whole life to horse business. All my clients virtually are in the horse business. I'm an owner and breeder of horses in my non-legal capacity. I'm the first to admit that my being a tax lawyer has nothing to do with special factors. Courts have been clear on that, but they're kind of fuzzy about the rest of it. So we've got this case called Bodie that pays lip service to both of those things that we think are special factors here. Well, Pelley says that's just dicta. I'd rather have dicta than nothing. And there's nothing in the other cases that say that under no circumstances do the horses can't be a special factor. We think they are here. There's no case that says even in dicta that my vast experience, I think it's fair to call that, in the horse business is irrelevant and shouldn't ever be used as a special factor. All we have is Fifth Circuit saying, you know, can be. Both of those things can be. So, yes, I'd like, do I understand that I have these 50 seconds for rebuttal? Yes. Yes, you have those 50 seconds for rebuttal. I'm sorry? Yes, you have 50 seconds left for rebuttal. Thank you. Ms. Avetta? Thank you, Your Honors, and may it please the Court. Julia Avetta for the Commissioner. Nothing in the briefs and nothing that we have heard today, Gaines says, or implies any abuse of discretion in the tax court's determination here that a was 276.1 hours for trial and post-trial briefing at the statutory maximum rate of $180 an hour. That is a maximum. It was misstated earlier that the statute starts at a base rate of $180 an hour. It, in fact, sets that as a cap, which can only be transcended on a showing of very compelling special factors. And here we have, at best, dicta that suggests that in certain circumstances, some of the factors that were not even found to be present or material on this record might break through that cap and authorize an attorney to receive fees in excess of the statutory cap. We don't have that here. We don't have a finding here that any course expertise was necessary for the taxpayer to prevail at trial. To do so, he had to show that he had spent 500 or more hours on a business activity for which he sought to claim deductions. That would make those deductions active and not passive. He made that showing through telephone records. And the telephone records were so voluminous that the tax court looked at them and said, it's plain from this that you exceed this 500-hour threshold. It's so plain that you have exceeded this threshold that from the point at which the commissioner is satisfied that this information is reliable, we don't even find that position substantially justified going forward anymore. So you get to be a prevailing party now. You get to recover your fees. That does not imply that you should, with a clear-cut case based on documentary evidence, rack up hours and hours and hours and hours of fees conferring attorney and client together drafting and redrafting and redrafting briefs on standards that wound up not being applied. And basically taking 450 hours from trial and post-trial and specifically 300 hours post-trial to write two sets of briefs, which were not long, on a stipulated evidentiary record with two days of trial testimony. This was not a complicated editing job, even for someone who values concise and well-written briefs. The answer was apparent to the tax court and the tax court held should have been apparent to the commissioner as early as November of 2009. The government does not contest the award of the $180 an hour rate is what the statute prescribes. We see no abuse of discretion in limiting the appellant's recovery to that amount. And if the court has no questions, we will rest on our brief. Thank you. Thank you. Thank you, your honors. I just wanted to say that it wasn't as simple as doing two briefs. They conveniently forget about the fact that I had to read 380 pages of transcripts and know them inside out before these briefs were written. And before the reply brief was written, we had to study, of course, the appellee's answering brief. Those aren't small tasks. I think we understand that those are not small tasks. The real question that we have, I think, is no one has made an allegation that the labor that you put in was unreasonable. What they've is, is there an abuse of discretion in the court's finding that a reasonable fee is as it approved, right? So clearly, you're free to bill your client for your time. There's no indication that that's not an appropriate fee. There's no indication that $400 isn't entirely appropriate in the field. The question is, is that did the judge abuse his discretion? And really, that's the question we want you to address. I understand, Your Honor. I think that either there was an abuse of discretion or a terrible error made in using the only reason for cutting those hours 50% was that he was a telephone addict. That's not true. I was charging him $400 an hour for those telephone calls. The people in Louisiana weren't. And the people in Louisiana were running a horse business for him, not writing briefs. I just don't think the two are comparable. And then they're topped off, the icing on the cake is they get the numbers all wrong by a factor of 20. Thank you, Mr. Quigle. Thank you, Your Honor. Any further questions? I see none. Thank you. Thank you, counsel, for your appearance and the argument you provided to the court. And for the briefing that's been submitted, we will take the case under advisement.